972 F.2d 344
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Weldon D. WAITES, Defendant-Appellant.
 No. 91-5043.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 5, 1992
Decided: July 31, 1992
 
 John McMahon Young, Columbia, South Carolina, for Appellant. Gregory Poole Harris, Assistant United States Attorney, Columbia, South Carolina, for Appellee.
 John S. Simmons, United States Attorney, Columbia, South Carolina, for Appellee.
 Before HALL and NIEMEYER, Circuit Judges, and TILLEY, United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Weldon Waites appeals his convictions, which followed a plea of guilty, and his sentence on multiple counts of conspiracy, bank fraud, false statements, and money laundering. We dismiss certain challenges to Waites' sentence, and affirm in all other respects.
 
 I.
 
 2
 The scheme that led to these convictions began in October, 1986. Weldon Waites owed money to H. P. Stephenson, and Stephenson was threatening Waites with physical harm and exposure of some shady financial dealings. Waites enlisted the assistance of his girlfriend Angela Swartz, a vice-president of Republic National Bank in Columbia, South Carolina. Swartz had the Bank issue a $5,500 cashier's check to Waites, which he used to pay off Stephenson. To cover the check, Waites and Swartz conspired to issue a larger check, and then another, and another. Soon more and more money was floating on the kited checks.
 
 
 3
 The amount of money involved grew too large to float, and Waites and Swartz began creating fraudulent loans to paper the lost money. They enlisted three compatriots to help, so that all of the loans would not be going directly to Waites. New loans were repeatedly made, with the proceeds going to pay old loans, and to support a luxurious lifestyle for Waites.
 
 
 4
 Like most such schemes, the conspiracy eventually collapsed under its own weight, but what a weight it attained-the Bank had been defrauded of $2,785,195.94.
 
 
 5
 Waites, Swartz, and three others were indicted on June 20, 1990, and charged with 29 counts of conspiracy, bank fraud, false statements, and money laundering. Waites, Swartz, and two of their three coconspirators pled guilty to several of the counts. Waites was sentenced to 80 months in prison, and Swartz to 48 months.
 
 
 6
 Waites appeals.
 
 II.
 
 7
 Waites argues that he was entitled to a downward departure for substantial assistance. The government made no motion for such a departure. Absent a governmental promise to make the motion in a plea agreement, this circuit's rule had been that the government's decision was unreviewable. United States v. Wade, 936 F.2d 169 (4th Cir. 1991). Recently, however, the Supreme Court reviewed Wade on certiorari. Though it affirmed our judgment, the Court held that district courts do have the power to review the government's decision not to move for the substantial assistance departure to ensure that the government's action does not have an unconstitutional motive. Wade v. United States, 112 S.Ct. 1840, 1844 (1992).
 
 
 8
 Waites was prepared to put on evidence of his substantial assistance, but the district court ruled that it had no power to grant the departure without the government's motion. Wade shows that this reasoning was flawed; however, we need not remand. Waites' proposed showing-that he in fact substantially assisted-is, as a matter of law, not a basis on which the district court may review the government's decision. No degree of assistance, standing alone, creates a governmental duty to make the motion. Id. ("[A]lthough a showing of assistance is a necessary condition for relief, it is not a sufficient one.").
 
 III.
 
 9
 Waites' principal coconspirator, Swartz, wound up with a 48month sentence, almost three years shorter than Waites'. This disparity was caused by (1) the government making, and the district court granting, a substantial assistance motion for Swartz, and (2) Waites' four-level enhancement for being the "organizer or leader" of the activity, which exceeded a two-level enhancement Swartz was assessed for breach of trust. Waites argues that, even if his guidelines sentence was correctly computed, sentences among equally-culpable conspirators should be identical. His supposed authority for this proposition is United States v. Campuzano, 905 F.2d 677 (2nd Cir.), cert. denied, 111 S.Ct. 363 (1990). Campuzano has nothing to do with downward departures to equalize sentences. In Campuzano, two drug conspirators were convicted of the same crimes, and the guidelines' "relevant conduct" was the same for each. However, the two probation officers who prepared the presentence reports came up with different "drug weights." The district court simply adopted the lower estimate of drug weight and used it to set the same base offense level for both defendants. The Second Circuit did not disturb this eminently sensible ruling.
 
 
 10
 Several circuits have held that defendant may not challenge a guidelines sentence based on a coconspirator's lesser sentence. See United States v. Goff, 907 F.2d 1441, 1447 (4th Cir. 1990) (collecting cases). As in Goff, however, we need not decide whether a district court has the authority to depart in these circumstances. The district court ruled that Waites had failed to prove by a preponderance of the evidence that the supposed mitigating circumstance was present. Though we assume for purposes of argument that the district court has the discretion to eliminate coconspirator sentencing disparity through a downward departure, we cannot review his refusal to do so. United States v. Bayerle, 898 F.2d 28 (4th Cir.), cert. denied, 111 S.Ct. 65 (1990).
 
 IV.
 
 11
 In U.S.S.G. § 5K2.12, the Sentencing Commission concedes that it could not adequately take into consideration the proper effect that should be given to crimes committed under duress, coercion, or as the result of blackmail. Accordingly, the Commission authorized departures where serious duress, coercion, or blackmail gave rise to the criminal conduct.
 
 
 12
 Waites argues that the district court erred in failing to grant him a § 5K2.12 departure. The government concedes that a few of the fraudulent loans and cashier's checks were obtained so that Waites could pay a debt he owed Stephenson, who had threatened Waites.
 
 
 13
 However, the government emphasizes that Stephenson committed suicide in February, 1989, but the bank fraud perpetrated by Waites and Swartz continued and escalated.
 
 
 14
 As we stated above, the district court's refusal to downwardly depart, where it results from an exercise of discretion rather than an incorrect application of the guidelines or a mistaken belief that the court is without authority to depart, is unreviewable. Bayerle, 898 F.2d 28.[1]
 
 V.
 
 15
 When they were indicted, Waites and Swartz went to attorney Fedor and engaged him to represent them. Both wanted to plead guilty to all charges. Fedor undertook to represent both.
 
 
 16
 At arraignment, the magistrate exhaustively warned Waites and Swartz about the perils of multiple representation, as required by Fed. R. Crim. Pr. 44(c). Fedor stated on the record that both were adamant about wanting him to represent them, and that he had them sign documents saying that he had apprised them of the risk of a conflict. However, Fedor felt that the interests of Waites and Swartz would not conflict, and both clients told the magistrate that they wanted to continue the multiple representation.
 
 
 17
 At Waites' sentencing, Swartz was called as a witness concerning Stephenson's blackmailing of Waites. The district court scolded Fedor a bit about putting himself in such a position. Fedor, however, stated that he believed Swartz' story would support Waites, and there would be no actual conflict of interest. Two other attorneys were present representing Waites, including Young, his current counsel.[2] Young, not Fedor, examined Swartz.
 
 
 18
 Waites now asserts that he was denied effective assistance of counsel, because his attorney labored under an actual conflict of interest that adversely affected his performance. See Cuyler v. Sullivan, 446 U.S. 335 (1980); United States v. Tatum, 943 F.2d 370 (4th Cir. 1991). He maintains that there may have been questions Fedor would have asked Swartz but for his multiple representation, though he gives no clue as to what they were. Fedor's multiple representation did not hamper Young's examination of Swartz-Fedor did not object to any questions in his capacity as Swartz' attorney. Swartz simply testified about Stephenson's "vicious" personality and the money he received from the proceeds of the scam. She did not testify against Waites in any fashion.
 
 
 19
 We decide all too many cases involving multiple-representation conflicts of interest-so easily avoided, but so intractable once created. Within broad limits, however, we do not shield an intelligent, informed defendant from the untoward consequences of his decision to share counsel with a codefendant. The right to conflict-free counsel may, under most circumstances, be waived, and the thoroughness of the magistrate's cautions to Waites and Swartz places a significant obstacle in Waites' path. There are, on the other hand, extraordinary situations in which the attorney's conflict causes such a breakdown of the adversary system that justice is mocked. In such a case, the district court must prohibit the multiple representation and the affected attorney must stand aside. E.g., Hoffman v. Leeke, 903 F.2d 280 (4th Cir. 1990) (defendant's trial counsel negotiated a cooperation agreement for defendant's coconspirator, under which coconspirator became star witness against defendant). Waites' case does not compare to the appalling conflict of interest in Hoffman.
 
 
 20
 In short, we see no actual conflict of interest adversely affecting Fedor's performance in this record. If there is some sort of hidden conflict between Waites' and Swartz' interests, it can be developed in a habeas case. See Tatum, 943 F.2d at 379 ("Typically the competency of counsel is best left for collateral review....").
 
 
 21
 Waites' challenge to the district court's refusal to downwardly depart is dismissed; in all other respects, the convictions and sentence are affirmed.
 
 AFFIRMED IN PART AND DISMISSED IN PART
 
 
 [1]
 The government caustically points out that Waites has not shown how Stephenson coerced him into defrauding the bank of $55,000 to purchase a condominium, $119,000 to purchase a 36-foot boat, $20,000 for partial payment on a Corvette for his daughter, or $5,000 for Rolex watches
 
 
 [2]
 By mentioning the presence of unconflicted co-counsel, we do not intend to imply any retreat from our holdings in United States v. Tatum, 943 F.2d 370, 379 (4th Cir. 1991), and Hoffman v. Leeke, 903 F.2d 280, 287 (4th Cir. 1990), that the efforts of unconflicted co-counsel do not ordinarily purge the prejudice caused by an actual conflict of interest